# ANNA BROOKS AND ANOTHER v. F. W. THORNE AND OTHERS.[1]

January 11, 1929.

No. 26,906.

[1]Reported in 222 N. W. 916.

*Harry A. Hageman,* for appellants.
*Charles H. Winter,* for respondents.

OLSEN, C.

Appeal by plaintiffs from an order denying their motion for a new trial.

Plaintiffs, husband and wife, sold to F. W. Thorne, hereinafter referred to as defendant, an apartment building and the lots whereon it was located. The title to the property stood in the name of the wife, Anna Brooks. The price was $57,000. The sale contract provided for the payment of $4,000 cash, the purchasers to assume a mortgage of $20,000 then against the property, and to pay the balance of $33,000 in monthly instalments over a period of years. The mortgage against the property was payable in instalments of $500 semi-annually. The vendee agreed to join in any renewal, extension or replacement of the mortgage, if required. Three years later, on or about March 4, 1926, the parties agreed upon a refinancing operation whereby a new mortgage for $29,000, to be signed by plaintiffs and defendant, was to be placed on the property and the old mortgage taken up. A new or amended contract was then entered into, reciting the giving of the new mortgage and that out of the proceeds thereof plaintiffs had been paid $11,500, which, with payments already made, reduced the amount unpaid on the contract to $10,600, this balance to be paid in monthly instalments in reduced amounts. The new mortgage, after payment of the old and commission and expenses, left a balance of $9,747.75 towards the payment of the $11,500, which plaintiffs were to have. This left a balance of $1,769.50 to be provided by defendant out of other funds to make up the $11,500 and a small interest item to be paid to plaintiffs.

Defendant had an account in the Ramsey County State Bank. On the morning of March 4, 1926, he had a balance of $428.07 in this account. On that day he borrowed $1,500 from the bank, which was

placed to his credit in the account. To secure such loan, he gave to the bank one note for $500 and one for $1,000, due in 90 days. The bank would loan only $500 on his individual note, so defendant and the cashier of the bank asked plaintiff Edwin Brooks to sign or indorse the $1,000 note as surety for defendant, which was done. Defendant's bank account shows further items of deposits as follows: March 4, $105; March 5, $155; March 9, $335.52. Debit items in the account are as follows: March 6, $456.11; March 8, $140; March 9, check to these plaintiffs, $1,769.50; credit balance that day, $157.98.

Defendant failed to pay the $1,000 note when due, and on June 7, 1926, the bank charged the note, interest and protest expense thereon, to the account of plaintiff Edwin Brooks. It is this item of $1,016 so paid by Edwin Brooks to the Ramsey County State Bank, as surety for defendant on this note, that is the basis of this action and which plaintiffs ask to have established as an equitable vendor's lien against the property in question.

That the plaintiff Edwin Brooks is entitled to judgment against defendant for this sum of $1,016 and interest thereon is conceded, and the trial court so ordered. But the trial court refused to find that plaintiffs were entitled to a vendor's lien against the property and refused to order that the judgment to be entered be declared a specific lien upon the interest of defendants in the property in question.

We adopt plaintiffs' statement in their brief that there are but two questions in the case: First, the right of plaintiffs to the lien sought; second, the effect thereon of the claim of defendant Victoria Baber.

As to the claimed vendor's lien, a brief consideration of the facts would seem to sustain the court's findings on that issue. Defendant actually paid to plaintiffs the $11,500 called for by the contract, and payment thereof is acknowledged in the contract. The credit in the bank, out of which part of the payment was made, belonged to defendant. Plaintiff Edwin Brooks had no lien or charge thereon, and it cannot be said that he paid any part of the purchase money.

The payment was made out of defendant's general account in the bank, in which account was commingled over $1,500 of moneys from sources other than the $1,000 note. Plaintiff Edwin Brooks at most was but a surety for an indebtedness owing by defendant to the bank. When he later paid the note, he became entitled to reimbursement as a surety who has paid the debt of his principal.

The doctrine that the vendor has a lien for unpaid purchase money is recognized but not favored in this state. The policy of our laws does not favor liens on real estate not evidenced by any written instrument, and the doctrine of vendor's lien is limited rather than extended. A transferee of a note given to the vendor for purchase money does not acquire any lien. Hammond v. Peyton, 34 Minn. 529, 27 N. W. 72. One who lends or advances money to the vendee wherewith to pay the purchase price acquires no lien. Soukup v. Wenisch, 163 Minn. 365, 204 N. W. 35. See also Peters v. Tunell, 43 Minn. 473, 45 N. W. 867, 19 A. S. R. 252; Radke v. Myers, 140 Minn. 138, 167 N. W. 360; Shove v. Burkholder Lbr. Co. 154 Minn. 137, 191 N. W. 397. The lien does not follow the land into the hands of a bona fide purchaser or mortgagee without notice.

In our present case the plaintiffs did not convey the land to defendant, but sold to him on contract and by that contract provided ample remedies for any default in payment of the purchase price. Plaintiffs hold title to the land as security for the payment of the purchase price. If the purchase price has in fact been paid, then of course no lien, either equitable or by contract, remains. If the purchase price has not been paid, plaintiffs have ample security and remedy under their contract. As early as the case of Selby v. Stanley, 4 Minn. 34 (65), it was held that, where the vendor takes security upon the land sold, by way of mortgage, or if he takes other security, he has no equitable vendor's lien, unless he retains it by express agreement.

The case of Duke v. Balme, 16 Minn. 270 (306), goes only to the extent of holding that where the purchaser delivered to the vendor, as part of the purchase price, certain land warrants, which the purchaser did not in fact own and the assignments of which were

forged, such warrants did not constitute payment, and the vendor's lien remained.

In the case of Moore v. Cary, 138 Tenn. 332, 197 S. W. 1093, L. R. A. 1918D, 963, cited by plaintiffs' counsel as being not materially different on the facts from the present case, the original note was given direct by the purchaser to the vendor for part of the purchase price of the land. The note was thereafter transferred by the vendor to a bank by indorsement, upon which the vendor was liable. There were thereafter several renewals and changes made in the obligation. While we might not be willing to extend the theory of vendor's lien so far as was done in that case, the fact remains that the original note there was a direct obligation of the purchaser to the vendor for part of the purchase price of the land. The court considered that the vendor had reacquired the original obligation.

In the present case we find no reason for extending the theory of vendor's lien to cover the facts here shown.

Plaintiffs having failed to establish any equitable lien, the effect of the claim of Victoria Baber upon such a lien becomes obiter.

Order affirmed.