529 N.W.2d 449 (1995)
AIRLINES REPORTING CORPORATION, Appellant,
v.
NORWEST BANK, N.A., f/d/b/a The Bank Wayzata, N.A., Respondent.
No. C5-94-2000.
Court of Appeals of Minnesota.
March 28, 1995.
*450 Richard I. Diamond, Diamond & Grady, Minneapolis, for appellant.
Richard T. Thomson, Lapp, Laurie, Libra, Abramson & Thomson, Chartered, Minneapolis, for respondent.
Considered and decided by HUSPENI, P.J., HARTEN and MINENKO,[*] JJ.

OPINION
HUSPENI, Judge.
Appellant, the holder of a letter of credit, brought this action after respondent bank refused to honor appellant's demand for payment on a letter of credit because appellant presented an altered photocopy instead of the original. Both parties moved for summary judgment. The district court granted respondent's motion because it found no genuine issue of material fact and concluded as a matter of law that holders of letters of credit must comply strictly with their terms, that there was no basis to estop respondent from demanding strict compliance, and that appellant had not complied even substantially, much less strictly, with the terms of its letter of credit. Because we find no issue of fact and conclude that respondent is entitled to judgment as a matter of law, we affirm.

FACTS
Appellant Airlines Reporting Corporation (ARC), a non-profit clearinghouse which procures airline tickets for travel agents, requires the travel agents to obtain letters of credit. In 1988, appellant told Market Travel, an agency, that it needed a letter of credit in the amount of $20,000. Market Travel, a customer of The Bank Wayzata (Bank),[1] requested Bank to issue a letter of credit for $20,000 in favor of ARC.
Bank duly issued letter of credit # 658, which provided that "[a]ny draft(s) drawn by you under the Letter of Credit shall be accompanied by this Letter of Credit." Bank sent ARC a cover letter on June 29, 1988, certifying that the signature on the letter of credit was authentic and saying that the letter of credit was attached. ARC does not have the original of this letter or of the letter of credit. On June 29, 1989, Bank again wrote to ARC, this time amending the letter of credit. The amendment letter stated that "[w]hen the draft is presented, it must be accompanied by the Letter of Credit." ARC does have the original of this letter.
*451 An ARC employee submitted an affidavit asserting that after ARC received the amendment letter, other ARC employees allegedly sought but could not find the original letter of credit, orally asked Bank to update its files on the letter, and received from Bank a copy of the certification letter and a copy of the letter of credit with blue ink alterations, including a traced signature. The affiant testified during his deposition, however, that he had no personal knowledge of any oral communication between any ARC employees and Bank, nor of who added the blue ink alterations to the photocopy.
ARC presented this altered document to Bank with its demand for payment on December 16, 1991. Payment was refused because the original letter of credit did not accompany the demand.

ISSUES
1. Is the Minnesota standard for letters of credit strict compliance rather than substantial compliance?
2. Was there a basis for estopping respondent from demanding strict compliance?

ANALYSIS
A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. On appeal the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.
Fabio v. Bellomo, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). After hearing the parties' cross-motions for summary judgment, the district court made twelve "Findings of Undisputed Fact" and three conclusions of law. While there may be cases in which factual issues would preclude summary judgment upholding denial of payment on a letter of credit, we are convinced that there are no preclusive factual issues here: ARC's own computer records indicate that the letter of credit was received several weeks prior to the arrival of the altered photocopy. ARC agrees that "there is largely unanimity on the factual background here," but opposes each of the three conclusions of law: that beneficiaries of letters of credit must comply strictly with their terms, that there is no basis to estop Bank from demanding strict compliance, and that ARC did not comply strictly or even substantially with the terms.

1. The strict compliance standard
The level of compliance required for the terms of letters of credit is a question of first impression in Minnesota. See LeaseAmerica Corp. v. Norwest Bank Duluth, 940 F.2d 345, 348 (8th Cir.1991) ("Minnesota law [on the level of compliance required for letters of credit] applies to this case, but the parties have cited us no authority in point and we have found none"). LeaseAmerica adopted a standard:
[T]he weight of authority favors a rule requiring strict compliance with the terms of a letter of credit, and we adopt that rule.
Id. (citations omitted). Where a lacuna in Minnesota law is filled by a federal court decision, we need not adopt it. See Northpointe Plaza v. City of Rochester, 457 N.W.2d 398, 403 (Minn.App.1990) (state courts are not bound by federal court decisions even as to the construction of a federal statute), aff'd 465 N.W.2d 686 (Minn.1991); Jendro v. Honeywell, Inc., 392 N.W.2d 688, 691 n. 1 (Minn.App.1986) (although statutory construction of federal law by federal courts is entitled to due respect, this court is bound only by the statutory interpretations of the Minnesota Supreme Court and the United States Supreme Court), pet. for rev. denied (Minn. Nov. 19, 1986); see also Rasheed v. Chrysler Corp., 445 Mich. 109, 517 N.W.2d 19, 27 n. 20 (1994) ("[a]lthough federal precedent is persuasive, it is not binding on state courts").
Nonetheless, while we are not bound by the LeaseAmerica holding, we are persuaded by it. The eighth circuit was explicit in its rejection of substantial compliance:
Adoption of a substantial compliance standard would place issuing banks in uncertain *452 positions with respect to their obligations. * * *
[T]he substantial compliance standard is not standard at all. It is an invitation to controversy. It promotes dispute. It is anathema to the effective functioning of a marvelous commercial device. It transforms the quick, efficient, inexpensive letter of credit into the lumbering, expensive performance bond.
LeaseAmerica, 940 F.2d at 348, 349 n. 4 (quoting Dolan, Strict Compliance with Letters of Credit: Striking a Fair Balance, 102 Banking L.J. 18, 28 (1985)). We adopt the reasoning of the eighth circuit and find a strict compliance standard for letters of credit to be appropriate.[2] Strict compliance required in this case that any drafts drawn under the letter of credit be accompanied by "this Letter of Credit." ARC did not strictly comply and Bank properly refused to honor ARC's demand for payment.

2. Estopping Bank from demanding strict compliance
ARC combines law and equity to support its argument that Bank is estopped from refusing to honor the document ARC presented to Bank, citing two UCC provisions, Minn.Stat. § 336.5-106(1)(b) (1994):
Unless otherwise agreed a credit is established as regards the beneficiary when he receives a letter of credit or an authorized written advice of its issuance[,]
and Minn.Stat. § 336.1-103 (1994):
Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the * * * law relative to * * * estoppel * * * shall supplement its provisions.
ARC invokes the first provision to argue that the altered photocopy was "authorized written advice" that the letter of credit was issued and that credit was therefore established, and the second provision to argue that because Bank's actions were consistent with the extension of credit, Bank is now estopped from refusing to honor that credit.
ARC's equity argument is misplaced. The terms of the letter of credit constituted a clear agreement between the parties, and Bank did nothing to indicate that ARC would not be required to comply with those terms. Minn.Stat. § 336.1-103 has been construed to oppose, not to support, ARC's equity argument: "[w]here UCC provisions are determinative, the application of equitable principles is unnecessary." First Nat'l Bank v. Olsen, 403 N.W.2d 661, 666 (Minn.App.1987); see also Kingery v. Kingery, 185 Minn. 467, 470, 241 N.W. 583, 584 (1932) ("Equity follows the law, and a court of equity will not disregard statutory law or grant relief prohibited thereby."). We are not persuaded that there exist any grounds for invoking equity in this strictly commercial matter. We find equally unpersuasive ARC's argument that its offer to indemnify Bank against the holder of the original letter of credit estops Bank from insisting on compliance with the terms of the original letter.
Agri Export Co-op v. Universal Sav. Ass'n, 767 F.Supp. 824 (S.D.Tex.1991), which ARC cites to show that a court has estopped a bank from refusing to honor a letter of credit when the original was not presented, is readily distinguishable on its facts.
[The beneficiary] presented the original of Letter of Credit No. 70 for payment on January 23, 1987. It is undisputed that [the bank] retained the original after this presentment. [The bank's] action, therefore, prevented [the beneficiary] from presenting the original letter of credit when requesting payment on March 2, 1987.
Id. at 828. There is no suggestion that ARC had previously presented the original letter to Bank, or that Bank had retained it.
Even if this were an appropriate case for invoking equity, we would find no grounds for estopping Bank from demanding strict compliance with the terms of the letter of credit.

*453 DECISION
Appellant's conduct in presenting an altered photocopy of a letter of credit which required that "this Letter" be presented with a demand for payment did not meet the strict compliance standard and there was no reason to estop respondent from demanding strict compliance. We conclude, therefore, that the district court properly granted summary judgment for respondent.
Affirmed.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.
[1] The Bank Wayzata has since been acquired by respondent Norwest Bank.
[2] Because we conclude that it is appropriate to require a strict compliance standard, and because it is undisputed that ARC's action in presenting an altered photocopy of a letter of credit stating that "[a]ny draft(s) drawn by you under the Letter of Credit shall be accompanied by this Letter of Credit" does not meet that standard, we do not address whether ARC would meet a substantial compliance standard.