Robert Vanden **BRUL** and Virginia Vanden Brul, Plaintiffs,

v.

**MIDAMERICAN BANK & TRUST COMPANY** and Donald F. Tanner, Defendants.

No. 92–2433–JWL.

United States District Court, D. Kansas.

April 20, 1993.

Jon A. Blongewicz, Dan C. Sanders, Fairchild, Stang, Beal, Barber & Sanders, Kansas City, MO, for plaintiffs.

John M. Keller, Richard W. Miller, Andrew Charles Gately, Miller Law Firm, Kansas City, MO, for MidAmerican Bank and Trust Co.

Lawrence L. Ferree, III, Ferree, Bunn & Byrum, Chtd., Overland Park, KS, for Donald F. Tanner.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter comes before the court on defendant MidAmerican Bank & Trust Company's (MidAmerican) motion to dismiss Counts I, II, and III of plaintiff's complaint, or in the alternative, for judgment on the pleadings, or in the alternative, for summary judgment (Doc. # 30) and the plaintiffs' cross motion for summary judgment (Doc. # 39) as it relates to MidAmerican only. The portion of the plaintiffs' cross motion which applies to defendant Donald F. Tanner is not considered here. For the reasons set forth below, MidAmerican's motion is treated as a motion for summary judgment and granted as such and the plaintiff's cross motion for summary judgment is denied to the extent it relates to Counts I, II, and III of the complaint against MidAmerican.[1]

### I.  Facts

The following facts are not in dispute for purposes of these motions. On May 18, 1988, MidAmerican issued to plaintiffs Robert and Virginia Vanden Brul an irrevocable letter of credit for an amount not to exceed $150,-000.00 for the account of defendant Donald F. Tanner. This letter of credit was issued as security for a promissory note executed by Tanner in favor of the plaintiffs. The letter of credit authorized the plaintiffs to draw against it by presenting (1) the original letter of credit, (2) the original promissory note endorsed in blank by the plaintiffs to indicate the current outstanding balance, (3) an affidavit by the plaintiffs stating that the promissory note was in default, and (4) a draft ordering MidAmerican to pay the plaintiffs.

The plaintiffs made demand of the bank in October, 1992 pursuant to the letter of credit for $150,000.00. When making this demand, the plaintiffs did not give the bank the original letter of credit nor the original promissory note as required by the letter of credit.

They did present the bank with photocopies of the promissory note and the letter of credit. The affidavit from the plaintiffs which accompanied the draft stated that the originals of these documents had been lost or destroyed and that neither document has been negotiated, gifted, transferred, pledged or assigned by the plaintiffs. The bank dishonored the plaintiffs' demand for payment because it believed that the documents accompanying the plaintiff's draft did not comply with the terms of the letter of credit. Subsequent demands on the bank have also been dishonored. In the course of one demand, the plaintiffs offered to indemnify MidAmerican "against someone producing the originals of the Note and Letter of Credit." The plaintiffs filed this suit on November 12, 1992. Counts I, II, and III of the complaint relate to MidAmerican's dishonor of the letter of credit.

### II.  Standard for Summary Judgment

MidAmerican's motion is treated as a motion for summary judgment because matters beyond the pleadings are presented and have not been excluded by the court. Fed. R.Civ.P. 12(b). When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. S.W. Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91

---

1. The court has determined that oral argument would not be helpful in understanding the issues presented by the motions. Therefore, no hearing was held on this matter.

L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.*, 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### III. Discussion

The determinative issue in these two motions is whether or not the bank could rightfully dishonor the Vanden Bruls' demand to MidAmerican for payment because the demand failed to comply with the terms of the letter of credit. For the reasons set forth below, the court holds that, under the circumstances in this case, MidAmerican could rightfully dishonor the Vanden Bruls' demand.

The Uniform Commercial Code ("UCC"), as enacted into law by Kansas, provides the following concerning the requirement to honor letters of credit: "An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract between the customer and the beneficiary." [2] K.S.A. § 84–5–114(1) (Supp.1992). Here MidAmerican, the issuer of the letter of credit, contends that the lack of the original promissory note and letter of credit makes the Vanden Bruls' demand for payment nonconforming and thus relieves it from the obligation to pay. The court agrees.

In arriving at that conclusion, the court first considered the standard to apply in determining whether or not a particular demand conforms. That is, how precisely must the demand comply with the terms of the letter of credit in order to trigger the requirement for the issuer to honor it? The drafters of the UCC deliberately chose not to specify the standard of conformity which must be met in order to require an issuer to honor a demand. K.S.A. § 84–5–102 Official UCC Comment 2 (1983). Two standards of conformity have emerged with significant following among the courts: strict compliance, *see, e.g., LeaseAmerica Corp. v. Northwest Bank Duluth, N.A.*, 940 F.2d 345, 348 (8th Cir.1991), and substantial compliance. *See, e.g.,* Kozolchyk, *Strict Compliance and the Reasonable Document Chapter,* 56 Brooklyn L.Rev. 45, 47–48 (1990). The parties have not cited any relevant Kansas authority, nor has this court found any, which establishes which standard of conformity Kansas would adopt. *See* K.S.A. 84–5–114 Kansas Comment 1983 ("And although Kansas has no decisions to date [concerning the appropriate standard for conformity], there is no lack of case law in other jurisdictions.") As might be predicted, the plaintiffs argue that Kansas would adopt a substantial conformity standard while MidAmerican argues that Kansas would apply strict conformity.

Of course, this court need not determine whether Kansas would adopt a substantial or a strict compliance standard if the documents submitted to MidAmerican with the demand for payment did not meet either compliance standard. The substantial compliance standard is more liberal than strict compliance and encompasses several deviations from it. Therefore, if the documents submitted with a demand for payment do not meet the substantial compliance standard, they certainly would not meet the requirements of strict compliance. The substantial compliance standard has been described variously as (1) "construing ambiguities in the letter against the issuer," K.S.A. 84–5–114 Kansas Comment 1983, (2) concluding that *"de minimis*

---

**2.** Under *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this court is bound by the choice of law provisions of the forum state of Kansas. Kansas follows "lexi loci contractus", meaning that the law of the state where the contract is made applies to the provisions of the contract. *See Civic Associates v. Security Ins. Co.,* 749 F.Supp. 1076, 1079

(D.Kan.1990); *Sims v. Metropolitan Life Ins. Co.,* 9 Kan.App.2d 640, 685 P.2d 321 (1984). MidAmerican is a banking corporation organized and existing under the laws of Kansas with its principal place of business in Johnson County, Kansas. All transactions which are the subject matter of this lawsuit were entered into in Kansas.

discrepancies between the requirements of a letter of credit and the actual documents tendered to the issuing bank do not justify dishonor," *see id.*, and (3) finding that "a variance between documents specified and documents submitted is not fatal if there is no possibility that the documents could mislead the paying bank to its determent." *American Airlines, Inc. v. Federal Deposit Ins. Corp.*, 610 F.Supp. 199, 202 (D.Kan.1985) (emphasis in original); *Flagship Cruises, Ltd. v. New England Merchants Nat'l Bank*, 569 F.2d 699, 705 (1st Cir.1968). When the demand for payment is scrutinized according to each of these descriptions of substantial compliance, it becomes clear that the Vanden Bruls did not even substantially comply with the requirements of the letter of credit, and so the obligation on the part of MidAmerican to honor it did not arise in any event.

First, the letter of credit was not ambiguous. It called for the original letter of credit and the original promissory note to be given to MidAmerican when demand was made. Therefore, it makes no difference whether any ambiguities are construed in favor of the beneficiary (the Vanden Bruls) and against the issuer (MidAmerican). The Vanden Bruls failed to submit the original documents as unambiguously required by the letter of credit.

Second, the failure to turn over the original letter of credit and promissory note was not a *de minimis* variance. The court can conceive of at least two reasons why MidAmerican requiring the original documents would be significant. For example, if the originals with signatures are required to be presented to make demand, this provides some control that the terms of the letter of credit and the promissory note had not been modified when they were photocopied. Moreover, the promissory note bearing the original signature is a negotiable instrument. *See* K.S.A. 84–3–104 (Supp.1992). If not required to return the original promissory note, the plaintiffs could negotiate it to a third party for value and thus receive more than they might be due under the note while

potentially subjecting Mr. Tanner to another claim against him for no additional value received by him. *See* K.S.A. § 84–3–201. Therefore, the requirement to return original documents is not *de minimis*.[3]

Third, there is a "possibility that the documents could mislead the paying bank to its determent." *American Airlines, Inc.*, 610 F.Supp. at 202. MidAmerican, the issuing bank, once it has paid monies under the letter of credit, can seek to be reimbursed from defendant Donald Tanner for those sums. *See* K.S.A. § 84–5–114(3) (1983). However, MidAmerican, as issuer of the letter of credit, owes Mr. Tanner a duty to "examine documents with care so as to ascertain that on their face they appear to comply with the terms of the credit." K.S.A. § 84–5–109(2) (1983). If MidAmerican (the issuing bank) accepts nonconforming documents from the Vanden Bruls (the beneficiaries) without a waiver from Mr. Tanner (for whose account the letter of credit was made), this may interfere with MidAmerican's right of reimbursement from Mr. Tanner. *See* Barkley Clark, *The Law of Bank Deposits Collections and Credit Cards*, ¶ 10.05[3][b] (3d ed. 1990 & Supp.1991). According to the facts before the court, Mr. Tanner has not waived the inconsistencies between the letter of credit and the actual documents presented to MidAmerican.

MidAmerican's ability to collect from Mr. Tanner would be further weakened if the plaintiffs were to negotiate the original promissory note to a third party who possesses it as a holder in due course (i.e., essentially, someone who takes the note by negotiation for value and without notice of defenses against the note). *See* K.S.A. § 84–3–302 (Supp.1992). That third party might collect from Mr. Tanner the amount owing under the promissory note and thus subject him to multiple claims. Between a holder in due course possessing the original promissory note and MidAmerican having honored a nonconforming demand for payment, the holder in due course certainly appears to

---

3. These examples and others below are premised on wrongdoing by one in the position of the plaintiffs. While the court has no basis to believe that the Vanden Bruls are dishonest, the reason for the very rules in question is to prevent those who are from succeeding at the expense of innocent parties. Thus, worst cases must be postulated.

have the stronger case. Under these circumstances, this is not a situation in which there is "*no* possibility" that MidAmerican would not suffer a detriment.

The plaintiffs contend that they have neutralized any possibility of MidAmerican being misled to its detriment because they have offered to indemnify the bank "against someone producing the originals of the Note and Letter of Credit." This is insufficient because the Vanden Bruls may not have sufficient assets to completely indemnify the bank against such losses and because they have not offered to indemnify the bank against any losses it may suffer if it is unable to collect funds from Mr. Tanner due to the nonconformity of the documents.

Because the demand for payment under the letter of credit fails to meet even the substantial compliance standard, it would also, by definition, fail to meet the strict compliance standard.[4] Under either standard, the documents that the Vanden Bruls submitted to MidAmerican when they demanded payment under the letter of credit failed to conform to the requirements of the letter of credit and MidAmerican was not required to honor the Vanden Bruls' demand for payment pursuant to the letter. *See* K.S.A. § 84–5–114(1) (Supp.1992). Because MidAmerican had no duty to honor the Vanden Bruls' demand for payment, MidAmerican's motion for summary judgment is granted and the plaintiffs' cross motion for summary judgment (as far as it applies to MidAmerican) is denied.

*IV. Conclusion*

**IT IS THEREFORE ORDERED BY THE COURT** that MidAmerican Bank and Trust Co.'s motion to dismiss, or in the alternative, for judgment on the pleadings, or in the alternative, for summary judgment (Doc. # 30) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that summary judgment is granted defendant MidAmerican Bank and Trust Co. on Counts I, II, and III of the plaintiffs' complaint.

**IT IS FURTHER ORDERED** that no claims remain against MidAmerican Bank and Trust Co. in this action.

**IT IS FURTHER ORDERED** that plaintiffs Robert and Virginia Vanden Brul's cross motion for summary judgment (Doc. # 39) is denied to the extent that it relates to Counts I, II, or III against MidAmerican Bank and Trust Co.

**IT IS SO ORDERED.**

---

4. In *Seattle–First Nat'l Bank v. Federal Deposit Ins. Corp.,* 619 F.Supp. 1351, 1362 (W.D.Okl. 1985), the court held that if a letter of credit required the original letter of credit to be returned to the bank when demand for payment was made and such original letter was not returned, the demand for payment would be deficient under the "strict compliance" standard.