Dale GRUNWALD and Robert
S. Gallagher, Plaintiffs–
Appellees,

v.

WELLS FARGO BANK, N.A.,
Defendant–Appellant.

No. 04–0641.

Court of Appeals of Iowa.

Nov. 23, 2005.

Diane Kutzko and Wesley B. Huisinga of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellant.

Robert S. Gallagher of Gallagher, Millage & Gallagher, P.L.C., Davenport, for appellees.

Heard by HUITINK, P.J., and HECHT and VAITHESWARAN, JJ., but decided by HUITINK, P.J., and MAHAN and HECHT, JJ.

MAHAN, J.

Wells Fargo Bank, N.A. (Wells Fargo) appeals from the district court's grant of summary judgment in favor of Dale Grunwald and Robert Gallagher (Plaintiffs) in an action seeking payment pursuant to a letter of credit. We reverse and remand.

## I. Scope of Review

 Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Wernimont v. Wernimont*, 686 N.W.2d 186, 189 (Iowa 2004). There is no fact issue if the only dispute concerns the legal consequences flowing from the undisputed facts. *Luttenegger v. Conseco Fin. Servicing Corp.*, 671 N.W.2d 425, 431 (Iowa 2003). Therefore, our review is limited to whether a genuine issue of material fact exists and whether the district court correctly applied the law. *Id.*; *see also* Iowa R. App. P. 6.4.

## II. Background Facts

The facts are undisputed.[1] Plaintiffs were the beneficiaries under an irrevocable letter of credit issued by Wells Fargo, dated August 27, 2001. The letter of credit was issued as a supersedeas bond allowing Quad City Quality Service, Inc.,

Grunwald's former employer, to appeal a judgment obtained by Grunwald and a judgment for the fees payable to his attorney, Gallagher. The letter of credit provided, in pertinent part: "The draft [demand for payment] must also be accompanied by the *original* of this Letter of Credit for our endorsement on this Letter of Credit of our payment of such draft." (Emphasis added.) In addition, the letter of credit provided "This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits (1993 Revision), International Chamber of Commerce Publication No. 500 [U.C.P. 500], and engages us in accordance therewith."

Following resolution of the appeal,[2] Plaintiffs made written demand on August 12, 2003, for payment of $152,122.77 pursuant to the letter of credit. The amount represented the judgment amount plus attorney fees. On August 14, Wells Fargo notified Plaintiffs of discrepancies in their demand. The discrepancy at issue in the parties' motions for summary judgment and on appeal is that the original letter of credit did not accompany the Plaintiffs' written draft for payment.

On August 19, Plaintiffs presented a revised written demand for payment. The letter accompanying the demand stated, "The original letter of credit was never produced by Quad City Quality Service, Inc., or its lawyer. We have searched diligently to find the same, but cannot." Affidavits executed by Grunwald and Gallagher accompanied the letter.

---

1. To the extent Plaintiffs' brief contains facts that are not in the record on appeal, we will not consider such facts. *See Alvarez v. IBP, Inc.*, 696 N.W.2d 1, 3 (Iowa 2005) ("This court will not consider facts for which there is no record support."); *see also* Iowa R. App. P. 6.14(1)(*d*).

2. *See Grunwald v. Quad City Quality Service, Inc.*, 662 N.W.2d 370 (Iowa Ct.App. 2003) (affirming in part, reversing in part, and remanding the case to district court for further rulings).

Wells Fargo again denied the demand on August 21 for failure to present the original letter of credit. The letter of credit expired on September 1, 2003.

## III. Proceedings

Plaintiffs filed a petition in district court on August 27, 2003, alleging wrongful dishonor of letter of credit, negligence by Wells Fargo, and unjust enrichment. Wells Fargo filed an answer denying all claims.

Plaintiffs filed a motion for summary judgment,[3] a statement of undisputed facts, and an affidavit executed by Gallagher. In their motion, Plaintiffs argued they had "fully complied with the letter of credit consistent with the uniform customs and practices for documentary credits [Iowa Code § 554.5108 (2003)] and the cases which interpret the federal version of the U.C.P."

Wells Fargo filed a resistance to Plaintiffs' motion and its own motion for summary judgment. It filed a brief in support of its resistance and motion and the affidavit of Brian T. O'Connell, a Vice President at Wells Fargo. In its motion, Wells Fargo claimed Plaintiffs' failure to strictly comply with the terms of the letter of credit entitled Wells Fargo to deny the demand for payment as a matter of law.

The day of the summary judgment hearing, Plaintiffs submitted the affidavit of John C. Bradley, a banker employed by Quad City Bank and Trust. Bradley stated, "I believe it to be the standard of practice of financial institutions who regularly issue letters of credit in this geographic area that it would be expected that said institutions would honor the presentment of an unaltered photocopy of a letter

of credit if accompanied by an affidavit from the beneficiary that the original document was lost, stolen, or destroyed."

The district court filed its ruling on the motions for summary judgment on March 24, 2004. It relied heavily on the Bradley affidavit, concluding Plaintiffs strictly complied with the terms of the letter of credit by supplying a photocopy of the original letter of credit, together with an affidavit authenticating the copy. The court continued:

It is the standard practice of financial institutions that regularly issue letters of credit in this geographic area to give such documents the same force and effect as the original document. Hence, plaintiffs have complied precisely with the terms and conditions of the letter of credit. [Wells Fargo] has failed to observe the applicable standard practice by dishonoring plaintiffs' presentation for payment, and has not established that payment under these circumstances would generally undermine the usefulness and attractiveness of letters of credit.

The court granted Plaintiffs' motion for summary judgment and denied Wells Fargo's motion for summary judgment. Wells Fargo appeals.

## IV. Strict Compliance

■■■ A letter of credit is defined as "a definite undertaking ... by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value." Iowa Code § 554.5102(1)(j) (2003).

---

**3.** Alternatively, Plaintiffs requested ruling on a motion for adjudication of law points. We note that an adjudication of law points no longer exists under the Iowa Rules of Civil Procedure. *See* Iowa R. Civ. P. 1.454 (repealed effective August 1, 2002); *Weber v. Warnke*, 658 N.W.2d 90, 92 (Iowa 2003).

A properly established letter of credit "constitutes an enforceable obligation created by statute in the nature of a contract by the issuer . . . in favor of the beneficiary. . . . The duty created in the letter of credit is wholly independent of the underlying contract between the issuer's customer . . . and the beneficiary." *Comdata Network, Inc. v. First Interstate Bank of Fort Dodge,* 497 N.W.2d 807, 809 (Iowa 1993) (quoting *Newvector Commc'ns, Inc. v. Union Bank,* 663 F.Supp. 252, 254–55 (D.Utah 1987)). Determination of a bank's duty of performance depends only upon " 'the presentation of conforming documents and not upon the factual performance or nonperformance by the parties to the underlying transaction.' " *Id.* (quoting *Newvector,* 663 F.Supp. at 255).

Our courts apply a rule of strict compliance to terms stipulated in letters of credit. *Comdata Network, Inc.,* 497 N.W.2d at 809. The rule was first announced in *First National Bank of Council Bluffs v. Rosebud Housing Authority,* 291 N.W.2d 41, 45 (Iowa 1980). The court recognized "[t]he key to the commercial vitality and function of a letter of credit is that the issuing bank's promise is independent of the underlying contracts, and the bank should not resort to them in interpreting a letter of credit." *First Nat'l Bank of Council Bluffs,* 291 N.W.2d at 44. Rather, "[t]he respective parties are protected by careful description of the documents which will trigger payment." *Id.* The court went on to explain the reason for a rule of strict compliance:

If courts deviate from the rule of strict compliance and insist in certain undefined situations that banks make payments notwithstanding the fact that the beneficiary failed to comply with the terms stipulated in the letter of credit, the certainty that makes this device so attractive and useful may well be undermined, with the result that banks may

become reluctant to assume the additional risks of litigation.

*Id.* at 45 (quoting *Insurance Co. of N. Am. v. Heritage Bank, N.A.,* 595 F.2d 171, 176 (3rd Cir.1979)). The rule has been applied in subsequent cases. *See Comdata Network, Inc.,* 497 N.W.2d at 809–10 (holding that letter of credit could not be extended to cover obligations not specifically mentioned in the letter of credit); *Atlas Mini Storage, Inc. v. First Interstate Bank of Des Moines, N.A.,* 426 N.W.2d 686, 688–89 (Iowa Ct.App.1988) (holding that temporary injunction was appropriate pending resolution of whether the documents presented with a demand for payment strictly complied with the documents required by the terms of the letter of credit).

The 1995 revisions to the Uniform Commercial Code (UCC), enacted in Iowa in 1996, codify the strict compliance standard. *See* 1996 Iowa Acts ch. 1026, § 7; Iowa Code § 554.5108 (2003). Iowa Code section 554.5108(1) provides:

[A]n issuer shall honor a presentation that, as determined by the standard practice referred to in subsection 5, appears on its face strictly to comply with the terms and conditions of the letter of credit. . . . [A]n issuer shall dishonor a presentation that does not appear so to comply.

Subsection 5 provides:

An issuer shall observe the standard practice of financial institutions that regularly issue letters of credit. Determination of the issuer's observance of the standard of practice is a matter of interpretation for the court. The court shall offer the parties a reasonable opportunity to present evidence of the standard practice.

Iowa Code § 554.5108(5).

The parties differ as to whether a determination of "standard practice" is

necessary in this case. Wells Fargo argues section 554.5108(5) does not permit consideration of extrinsic evidence of standard practice in this case, where the unambiguous language in the letter of credit required presentment of the original letter of credit. It contends the drafters of the Uniform Commercial Code, by referring to "standard practice," intended to codify cases that required strict compliance with express conditions of a letter of credit but recognized that mere immaterial discrepancies, such as typographical errors, could not form the basis of dishonor. Therefore, Wells Fargo concludes, Plaintiffs' failure to comply with the unambiguous requirement that the original letter of credit be presented justifies dishonor under the strict compliance standard.

In contrast, Plaintiffs argue Iowa Code section 554.5108(5) requires the district court to determine the standard of practice for honoring letters of credit prior to a determination of strict compliance pursuant to section 554.5108(1). Plaintiffs contend the district court properly considered the affidavit of John C. Bradley to determine the standard practice of financial institutions in the geographic area.

■ We think Wells Fargo has the better argument in this case. Central to the unique purpose of letters of credit is the "independence principle," which requires the issuer to pay a beneficiary on proper demand regardless of a breach or default on the underlying contract. *See* 3 James J. White & Robert S. Summers, *Uniform Commercial Code* § 26–2, at 113 (4th ed. 1995) [hereinafter White & Summers]; *see also First Nat'l Bank of Council Bluffs,* 291 N.W.2d at 44.

> The independence principle refines issuer's duty: issuer must deal only in documents. The letter of credit must spell out what documents must be presented, what they must recite and—in the future—what medium (written, electronic, otherwise). Events or circumstances outside the presented documents and the letter itself must not determine whether the issuer has a duty to pay in any given case.... *Nor is the issuer bound to look beyond the four corners of presented documents for facts that might cure discrepancies, omissions, or inconsistencies in the papers.*

3 White & Summers § 26–5, at 139 (emphasis added). Thus, "when a [letter of] credit's terms are clear, a court should not construe them at all." *J.P. Morgan Trust Co., N.A. v. U.S. Bank, N.A.,* 381 F.Supp.2d 865, 872 (E.D.Wisc.2005) (citing John F. Dolan, *The Law of Letters of Credit* ¶ 4.08[4] (rev. ed. 2003)). "A court should engage in interpretation only if a credit is ambiguous, i.e., 'when with equal plausibility [it] can be read more than one way.'" *Id.* (citing Dolan ¶ 4.08[4]; 3 White & Summers § 26–5b).

We recognize the revised UCC "specifically adopts the strict compliance standard as determined by the 'standard practice.'" *See* 3 White & Summers § 26–7, at 159. However, "[b]y adopting standard practice as a way of measuring strict compliance," the drafters indorsed only those cases in which minor typographical errors were overlooked by the court in applying the strict compliance rule. *See, e.g., Tosco Corp. v. Federal Deposit Ins. Corp.,* 723 F.2d 1242, 1247–48 (6th Cir.1983) (concluding strict compliance rule did not warrant dishonor of draft where deviations— change of "L" in "Letter" to "l," use of "No." instead of "Number," and addition of words "Clarksville, Tennessee"—were "insubstantial" and there was no possibility "that the bank could have reasonably been misled to its detriment"); *New Braunfels Nat. Bank v. Odiorne,* 780 S.W.2d 313 (Tex.Ct.App.1989) (concluding strict compliance did not warrant dishonor of draft

when draft requested payment on letter of credit number "86–122–5" and letter of credit specified number "86–122–S").[4]

The *Tosco Corporation* and *New Braunfels* cases are in stark contrast to cases applying the strict compliance rule to situations in which a letter of credit required presentation of an original document. In *Vanden Brul v. MidAmerican Bank & Trust Company*, 820 F.Supp. 1311 (D.Kan. 1993), the letter of credit at issue required presentment of the original letter of credit and promissory note. *Vanden Brul*, 820 F.Supp. at 1312. The plaintiffs' demand pursuant to the letter of credit included photocopies, not the originals. *Id.* An affidavit accompanying the draft stated the originals had been lost or destroyed and that neither document has been negotiated, gifted, transferred, pledged, or assigned by the plaintiffs. *Id.* The court held the lack of original promissory note and letter of credit made the demand for payment nonconforming and thus relieved the bank from its obligation to pay. *Id.* at 1313.

Similarly, the court in *Bisker v. NationsBank, N.A.*, 686 A.2d 561 (D.C.Ct.App. 1996), held that the bank properly refused to honor a demand for payment by the beneficiary where the promissory note accompanying the demand was not the original, as required by the terms of the letter of credit. *Bisker*, 686 A.2d at 562, 567. The court noted, " 'One manifestation of the strict compliance rule is the long-standing practice among issuers to require original documents unless the letter of credit stipulates otherwise.' " *Id.* at 566 (quoting *Western Int'l Forest Prods. v. Shinhan Bank*, 860 F.Supp. 151, 154 (S.D.N.Y.1994)); *see also Airlines Report-*

*ing Corp. v. Norwest Bank, N.A.*, 529 N.W.2d 449, 452 (Minn.Ct.App.1995) (holding that where "[s]trict compliance required ... that any drafts drawn under the letter of credit be accompanied by 'this Letter of Credit,' " presentment of an altered photocopy did not strictly comply and bank properly refused to honor the demand for payment).

The courts in *Vanden Brul, Bisker* and *Airlines Reporting Corp.* did not look beyond the express terms of the letter of credit at issue in each case. We find nothing in the revised UCC or its comments that requires us to do any differently in the case before us, where the letter of credit's terms were clear and unambiguous. The letter of credit required presentment of the original letter of credit to obtain payment. Plaintiffs failed to present the original letter of credit, thereby failing to comply with the explicit provisions of the letter of credit. Therefore, Wells Fargo properly denied payment.

Because we hold that application of the strict compliance rule does not require us to look beyond the express terms of the letter of credit in this case, we conclude the district court erred in granting summary judgment to Plaintiffs. We reverse the district court's decision and remand for entry of summary judgment in favor of Wells Fargo.

**REVERSED AND REMANDED.**

---

**4.** The UCC comments cite both *Tosco* and *New Braunfels*. *See* Iowa Code § 554.5108 UCC cmt. 1.